Louis Houck, Receiver, etc., Appellant, v. H. N. Holladay, Respondent.

St. Louis Court of Appeals, February 21, 1899.

Interpretation of Contract: REMEDY. In the case at bar, if the contract sued upon was merged in the general account, and was fully executed, plaintiff's right of action is on the general account and not on the special contract; but, if the contract was that the bonds, in question, should be applied on the Flaherty & Deavgnon debt, and that debt is still due and unpaid, and equals or exceeds the contract price of said bonds, then the plaintiff is not entitled to a money judgment for the contract price of the bonds, but his remedy is in equity to compel their application as payment on the Flaherty and Deavgnon judgment.

*Appeal from Wayne Circuit Court*—Hon. James F. Green, Judge.

Affirmed.

M. R. Smith for appellant.

The contract sued upon being a writing unsealed for the payment of money, the amount being ascertainable from the face thereof, is not affected nor barred by the five year statute of limitation. Reyburn v. Casey, 29 Mo. 129; Morrman v. Sharp, 35 Mo. 283; Shelton v. Wyman, 1 Mo. App. 131; Carr v. Thompson, 67 Mo. 472-476; R. S. 1889, sec. 6774, first sub. div. thereof. * * * The evidence in this case shows conclusively that plaintiff could not, nor could either of the railway companies, get a final settlement with the defendant of the accounts between them, * * * and that defendant by his acts and conduct, waived any right

he may have had to have such final settlement before being
sued to compel the payment of the agreed price to be paid for
the bonds.    Beckman v. Ins. Co., 49 Mo. App. 607; Pier v.
Heinrichoffen, 52 Mo. 333; Bayse v. Ambrose, 32 Mo. 484;
4 Ency. Plead. and Prac., pp. 629-631 and notes; 1 Chitty
on Plead., p. 326.

Louis F. Dinning for respondent.

Instructions 7 and 8 given at the instance of defend-
ant properly declared the law of the case so far as they applied.
If it be true that defendant's instruction 8 is contradictory to
instruction 5 given at the instance of plaintiff, he can not com-
plain because instruction 5 is not a correct declaration of the
law as applicable to the facts or any part of them, and said
instruction 8 properly declares the law.    Harrington v. Se-
dalia, 98 Mo. loc. cit. 589; Wilkins v. Railroad, 101 Mo. loc.
cit. 105; Reardon v. Railroad, 114 Mo. loc. cit. 405; Baker
v. Railroad, 122 Mo. loc. cit. 597; Francis v. Railroad, 127
Mo. loc. cit. 675.    This court will not consider objections
made to the action of the lower court, which were not made the
basis of a motion for a new trial.    Gordon v. Gordon, 13 Mo.
215; Cowan v. Railroad, 48 Mo. 556; Matlock v. Williams,
59 Mo. 105; Broughton v. Brand, 94 Mo. 169; Haynes v.
Trenton, 108 Mo. 123.    There is no reversible error in this
record against the appellant.    The judgment is for the right
party and should be affirmed.

BLAND, P. J.—The St. Louis, Cape Girardeau and Ft.
Smith Railway Company, succeeded the Cape Girardeau and
Southwestern Railway Company.    Louis Houck was the pres-
ident and general manager of Cape Girardeau and South-
western Railway Company, and also of its successor, the St.
Louis, Cape Girardeau and Ft. Smith Railway Company, and
in March, 1894, was appointed receiver of the latter company,

and sues as such receiver.    The petition is to recover on the following written instrument:

"Williamsville, Mo., February, 1889.

"Received of C. G. S. R'y Co., two (2) Consolidated Mortgage Bonds of said company, numbered 576 and 577; each said bond having attached 39 coupons, numbered from 2, representing 6 per cent interest from March 1st, 1889, to 40 representing 6 per cent interest to Sept.1, 1908, which I agree to deliver back to the company as above, or to pay for at the rate of 80 cents on the dollar on final settlement between said company and myself.

"H. N. Holladay."

The petition states there never was a settlement between the railway company and defendant, and that defendant refused to make a settlement though often requested to do so. The answer is a very long one; the material portions of it, in substance are, that the defendant had furnished the C. G. & S. Railway Company a large amount of ties, lumber, piling and goods, and for which at the time of the delivery of the bonds it was largely indebted to him, and that at the time the bonds were received by him the C. G. & S. Railway Company charged him with the par value of the bonds on a running account which it kept with the defendant; that at the time the bonds were delivered to him the C. G. & S. Railway Company was constructing an extension of its road from Wappapello, Missouri, to Hunter, Missouri, and that the ties, lumber and piling furnished the railway company were by it used in the construction of its said extension, and that the defendant at the request of the railway company, and on its promise to pay therefor, furnished the company's contractors for building said extension a large amount of goods, and that said goods went into the defendant's general account against the C. G. & S. Railway Company; that in March, 1889, he gave Louis Houck an option on the bonds at seventy-five cents on the dollar, and that he sold the bonds to Houck at seventy-five cents on the

dollar, and that after the sale the C. G. & S. Railway Company credited his account on its books with $400, and that no final settlement of running accounts has ever been had between the defendant and the railway company. He avers the last item of debt or of credit on said running accounts, was made and entered more than five years before the commencement of the suit, and pleads the statute of limitations, and denies generally all other allegations of the petition. •

Plaintiff filed a reply covering four pages of printed matter, putting in issue the new matter set up in the answer, averring specially its efforts to procure a settle-
REPLY.  ment of accounts with defendant, one of which was by a lawsuit, in which plaintiff alleges the railway company was forced by the persistency of defendant to take a nonsuit, on account of the absence of witnesses and counsel when the cause was called for trial, and that to permit the defendant to interpose "no settlement of accounts" as a condition presented to recovery, would be to perpetrate a fraud.

Evidence was introduced showing the transfer of the franchise, all property and choses in action of the C. G. & S. Railway Company to the St. L., C. G. & Ft. Smith Railway Company, and for the appointment of Louis Houck as receiver of the latter company. Plaintiff read in evidence the instrument sued on and the following voucher being a wrapper with the indorsement, "The bond mentioned within having been sold by H. N. Holladay to Coffin & Stanton, N. Y. City, H. N. H. should now be credited by 20 per cent of $2,000, $400. See voucher No. 10013."

"(Signed) Will H. Wheeler, Auditor."

It was admitted that Wheeler was auditor; as a witness he testified that when the two bonds were delivered to Holladay he charged his account with $2,000, and when they were sold he credited his account with $400, and that this charge

and credit, as he understood it, was a fulfillment of and com-
pliance with the contract; that he supervised the keeping of the
books of the railway company, and that the charge and credit
was made by his direction as auditor of the company, but that
he was unable to state the number of bonds sold to Holladay,
or to state whether he had accounted for these two bonds or
not, but believed that Holladay accepted their accounting as
rendered by the witness.   A copy of defendant's account with
the St. L., & C. G. & Ft. Smith Railway Company was filed
as an exhibit with Wheeler's deposition; in the account de-
fendant was charged with the face value of the two bonds and
credited with $400 by discount of the sale of the two bonds;
the balance, as shown by the footings of this account, was
$2,751.20 against Holladay.   Wheeler further testified that
the two bonds were sent by him as auditor from Cape Girar-
deau to Louis Houck at Williamsville, to be delivered by
Houck to Holladay, and that the receipt (one sued on) subse-
quently came to the auditor's office, and that as he then under-
stood it, the bonds were delivered to Holladay as security for
supplies, etc., previously furnished by Holladay to Flaherty
& Deavgnon, and was not then considered as a sale of the
bonds to Holladay; that he was either to return them to the
railway company, or account for them at eighty cents on the
dollar upon final settlement of accounts, and that to keep
track of the matter he charged Holladay with the face value
of the bonds, and that when the bonds were sold he credited
him with the discount of $400.   Louis Houck testified that in
March, 1889, he took an option from defendant to purchase
the bonds at seventy-five cents on the dollar; that he was not
acting for himself, but for New York brokers, who took the
bonds at that figure, and the money was paid over to the de-
fendant.   He testified further that Flaherty & Deavgnon were
contractors for the construction of a section of the railroad at
or near Williamsville, where defendant resided and kept a gen-
eral store; that in the month of January, 1889, defendant came

to him and told him that Flaherty & Deavgnon owed· him "lots" of money on account of supplies he had furnished them; that witness told defendant that he was satisfied that the rail-way company owed the contractors some money, but that he did not know the amount, as no estimate had been made of their work, and advised defendant to get a judgment against Flaherty & Deavgnon and garnish the railway company; that after this defendant came to him and told him he needed money, and again mentioned the Flaherty & Deavgnon debt; that witness told him that the company could not advance money on the contract of Flaherty & Deavgnon, but that he would let the defendant have two bonds of $1,000 each, which, when he got judgment against Flaherty & Deavgnon and gar-nished the company, could be credited at the rate of eighty cents on the dollar on any judgment that might be rendered against the company as garnishee, and that the agreement was that the bonds at the rate of eighty cents on the dollar should be applied on the indebtedness of Flaherty & Deavgnon; that Holladay afterward claimed a judgment for $1,600 or $1,650 against Flaherty & Deavgnon, which had not been paid to the knowledge of witness outside of the two bonds; that Holladay refused to credit the judgment with eighty per cent of the bonds and that an execution to force collection was issued; that litigation of an injunction suit to stay the collection of this judgment by execution was prosecuted by the railway company against Holladay, resulting in a judgment in the circuit court of nonsuit, which had been affirmed on appeal by the supreme court; that the nonsuit was forced by Holladay's taking advan-tage of the unavoidable absence from court of Houck, the principal witness for plaintiff and of the senior counsel, M. R. Smith, Esq., from court when the case was called for trial. Witness further testified that he had repeatedly tried to get a settlement of accounts with Holladay, but had not been able to do so, or to get Holladay to furnish the railroad company with a copy of his account against the company, and that he

thought, exclusive of the bonds, Holladay owed the railway company $3,000 or $4,000 on running account.

In view of the fact that there is no evidence in the record contradicting that of Wheeler, that the bonds were charged to Holladay at their face value, and that after they were sold he was credited on the same general account with the agreed discount of $400, and that Holladay approved of this action on the part of the railway company's officers; and in view of the further fact that Houck, the plaintiff, testified that when the bonds were delivered to Holladay it was expressly agreed that they should be applied as payment on the debt of Flaherty & Deavgnon to Holladay after judgment should be obtained by Holladay, and that he did obtain judgment for an amount equal to or exceeding the contract price of the bonds, which judgment Houck swore has not been paid, unless paid by these bonds, we are wholly unable to see upon what testimony the plaintiff is entitled to a money judgment against Holladay for the contract price of the bonds. If Wheeler's testimony, as to the interpretation put on the contract by the railway company's auditor and ratified by Holladay be accepted as correct, then by the charge of the face value of the bonds to Holladay's general account, and after their sale by the credit of the agreed discount to the same account the contract sued upon was merged in the general account and was fully executed, and plaintiff's right of action is on the general account, and not on the special contract. If on the other hand, Houck's version of the contract be accepted as the correct one, and the evidence seems to us to preponderate that way, then there can be no recovery in this action, for, if as he testified, the contract was that the bonds should be applied on the Flaherty & Deavgnon debt, and that debt is still due and unpaid and equals or exceeds the contract price of the bonds, then the plaintiff is not entitled to a money judgment for the contract price of the bonds, but his remedy is in equity to compel their application as payment on the Flaherty & Deavgnon judgment. In no view

REMEDY is in equity.

of the plaintiff's testimony is he entitled to recover in this action. The conclusions reached renders it unnecessary that we should notice the errors of the court complained of in the giving and refusing of instructions, or the objection to the competency of one of the jurors, and we affirm the judgment. All concur.

### ON MOTION FOR REHEARING.

BLAND, P. J.—The contention of appellant that if the bonds were delivered by Houck to Holladay to apply on a judgment which Holladay should thereafter recover against the railroad company as garnishee on execution against Flaherty & Deavgnon, and that because Holladay after obtaining said judgment refused to apply the agreed value of the bonds as a credit on said judgment, he thereby committed a breach of trust which entitled the appellant to recover the value of the bonds in an action as for money had and received, is answered by the verdict of the jury, who were in substance told by the fifth instruction given for appellant, that if they found the facts as above hypothecated, they should find for appellant, unless they found that Holladay gave the railroad company credit for the amount of the bonds on the general running account he had against the company. If the bonds were delivered to Holladay for the purpose and with the understanding that he should apply them as a credit on his judgment against the railroad company, then in view of the fact that he did obtain the judgment, but refused to apply the bonds as a credit on the judgment, and in view of the further fact that the judgment has never been paid, does it follow that the railroad company is entitled to recover back from Holladay the value of the bonds? We think not. In such circumstances the delivery of the bonds should be treated as payment in advance on a judgment to be obtained on account of a subsisting debt. Had no judgment been recovered, or had the railroad company,

after its obtension on the refusal of Holladay to give credit for the bonds paid the judgment, quite a different question would be presented.    The case is not analogous to that class of cases where a trustee makes himself personally liable for a trust fund by converting it to his own use or by diverting it from the purposes of the trust, to the injury of the *cestui que trust*.    Conceding the transaction created a trust, it was a unilateral one and the only injury inflicted upon the *cestui*, is the failure of Holladay to enter credit on the judgment for the amount of the bonds.  It seems to us that in the circumstances the transaction was a payment in advance to be applied upon a judgment to be obtained upon a subsisting debt, and on principle is not distinguishable from an ordinary case of payment, and we adhere to the view announced in the original opinion, that appellant's remedy is to compel a proper application of the payment.    All concur.